UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHY GAST,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>JO ANNE BARNHART, Commissioner of Social Security<br><br>　　　　　　　　　　　Defendant. | Civil No.　06cv2743-L (POR)<br><br>**REPORT AND RECOMMENDATION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR CROSS SUMMARY JUDGMENT**<br>**[Doc. Nos. 11, 13.]** |

　　Plaintiff Kathy Gast (hereinafter "Plaintiff") brings this action pursuant to 405(g) and 1383(c)(3) of the Social Security Act (hereinafter "Act") to obtain judicial review and remedy of the final decision of the Commissioner of the Social Security Administration (hereinafter "Defendant") in a claim for disability insurance benefits under Title II of the Act.  Plaintiff filed a motion for summary judgment and Defendant filed an opposition and cross motion for summary judgment.  After careful consideration of the papers, the administrative record and the applicable law, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and Defendant's cross motion for summary judgment be **GRANTED.**

**Procedural History**

　　Plaintiff filed an application for disability insurance benefits on October 14, 2004.  (Administrative Record ("R") at 64, 71.)  Plaintiff alleged a disability onset date of November 13,

2000.[1] (Id. at 64)  Both claims for benefits were denied at both the initial and reconsideration levels. (Id. at 19-23; 25-29.)  Plaintiff then filed a Request for Hearing by Administrative Law Judge ("ALJ") on October 18, 2005.  (Id. at 31.)  On August 2, 2006, a hearing was held before ALJ Steinman.  (Id. at 329-71.)  Dr. George Weilepp, an orthopedic surgeon, testified as the medical expert, and Nelly Katsell testified as the vocational expert.  (Id.)  On August 24, 2006, ALJ Steinman issued a decision denying Plaintiff's application.  (Id. at 10-16.)

Plaintiff subsequently sought review by the Appeals Council, but was denied review on October 18, 2006.  (Id. at 4-6.)  The ALJ's decision then became the final decision of the Commissioner of Social Security.  (Id.)

On December 20, 2006, Plaintiff filed a civil complaint in this Court seeking to obtain judicial review of the final decision of the Commissioner.  Defendant filed an answer on March 8, 2007.  On May 8, 2007, Plaintiff filed a motion for summary judgment, and on May 31, 2007, Defendant filed an opposition and a cross motion for summary judgment.

**Factual Background**

Plaintiff was born on April 13, 1955.  (Id. at 64.)  She graduated high school and took some vocational refresher courses on medical office procedures and medical billing.  (Id. at 80.)  She has past work experience as a customer service representative, medical office manager, owner and salesperson of a window covering business, and ramp and ground supporter.  (Id. at 73.)

Plaintiff suffered a work-related injury on November 13, 2000.  (Id. at 107.)  She worked as a customer counter representative for America West and lifted heavy baggage from the check-in area to the belt.  (Id. at 227.)  On November 18, 2000, she was seen in the emergency room with severe cervical pain with radiation into her left arm.  (Id. at 150.)  Dr. William Ford, her treating physician, diagnosed her with "acute cervical C5 disk with C6 radiculopathy left arm."  (Id.)  An MRI performed on November 20, 2000 showed a "left paracentral disc protrusion at C5-6, mildly indenting the left anterolateral aspect of the cord with mild bilateral neural foramen narrowing, more prominent on the left."  (Id. at 145.)  Plaintiff was hospitalized from November 18 to 21, 2000.  (Id.

---

[1]At the hearing, Plaintiff amended her last date of work to January 2, 2002, (id. at 334), but the ALJ's decision does not reflect that change.

at 141.)

Plaintiff started physical therapy on a regular basis beginning December 12, 2000. (Id. at 160-78; 196-203.) In March 2001 to January 2002, Plaintiff returned to work and worked as a customer service representative working four days a week for four hours. (Id. at 73.)

From January 2001 to January 2002, Plaintiff was seen regularly by Dr. Walker, a neurosurgeon. (Id. at 254-73.) In January 2001, Dr. Walker noted that Plaintiff complained of neck and left arm pain. (Id. at 269.) When he first evaluated her, she had some weakness of the biceps and wrist dorsiflexor and radial flexor and a little numbness on the thumb and index finger of the left hand. (Id.) After reviewing her MRI taken in November 2000, he opined that she had left C6 radiculopathy secondary to a herniated disk. (Id. at 272.) He also noted she has some shoulder pain and limitation of motion. (Id.) In January 2001, Dr. Walker discussed the option of surgery to improve her neck pain. (Id. at 273.) An MRI taken on August 27, 2001 showed degenerative changes of the cervical spine with C5-6 posterior disc osteophyte complex effacing the ventral CSF space. (Id. at 302.) After a year of treatment with physical therapy and medication and no improvement in symptoms, Plaintiff indicated she wanted the surgery. (Id. at 263.)

On January 9, 2002, Plaintiff underwent an anterior cervical discectomy and fusion for a cervical disk at C5-6. (Id. at 186.) On February 8, 2002, an x-ray showed C5-6 anterior fusion, diskectomy and terbody graft with normal alignment and no radiographic evidence of complication. (Id. at 253.) On March 22, 2002 another x-ray noted anterior fusion post surgery was identified at C5-6 and no acute abnormalities were noted in the cervical spine. (Id. at 252.)

From November 16, 2000 to December 4, 2003, she was seen regularly by Plaintiff's treating physician, Dr. William Ford. According to his notes, after surgery, Plaintiff's symptoms improved over time. (Id. at 215-18.) On September 26, 2002, she complained of a dull achy pain in her neck, (id. at 215), and on March 13, 2003, she had tightness in her neck (id. at 212). However, she had no radicular pain in her arms. (Id. at 212.) In October and December 2003, Plaintiff complained of a dull achy pain in her shoulder and both arms. (Id. at 205-06.)

On July 25, 2002, Dr Ford wrote that Plaintiff is stable and able to return to a permanent light-duty type work and even suggested a permanent transfer to the reservations department at her

previous job. (Id. at 217.) On January 16, 2003, Dr. Ford recommended that she return to permanent light-duty work with no lifting, pushing or pulling. (Id. at 213.) He recommended that she begin with four hours per day. (Id.) He gave her maintenance medication: Lortab, occasionally for pain; Ambien for sleep; and Fiorinal for headaches. (Id. at 208.) On September 11, 2003, Dr. Ford stated Plaintiff is employable with certain limitations and restrictions and recommended that she be seen at Volk Rehabilitation for retraining. (Id. at 207.)

On July 24, 2003, an x-ray of the cervical spine showed intact anterior interbody fusion and internal fixation involving C5 and C6 and slight narrowing of the C4-5 disc. (Id. at 301.) On April 2, 2004, an MRI of the cervical spine revealed "stable appearing C5-6 anterior interbody fusion without evidence of recurrent disc herniation, broad-based left paracentral disc bulging C4-5, no evidence of abnormal enhancement following administration of IV Gadolinium and mild retrolisthesis of C4 on C5." (Id. at 299.)

On July 1, 2004, Plaintiff was seen again by Dr. Walker who noted that she complained of discomfort in her neck and shoulders. (Id. at 250.) She had excellent strength in her left arm and her biceps weakness, wrist radial flexor weakness and her brachioradialis reflex depression have returned to normal. (Id.) Dr. Walker noted that clinically she does not appear to have a radiculopathy. (Id.) He suggested she return to Dr. Ford to evaluate her shoulders. (Id.) After being evaluated for her shoulders by Dr. Blakely, Dr. Walker opined that the pain in the shoulder was coming from the shoulder and not from her neck and told her there may not be any surgery to fix it. (Id. at 249.) He stated that the cervical spine is stable. (Id. at 249.)

On May 25, 2005, Dr. G. Kim Bigley, a neurologist, conducted an independent medical evaluation to assess Plaintiff's shoulder injury. (Id. at 311.) After reviewing her medical history and upon physical examination, Dr. Bigley, noted that from a neurological standpoint, Plaintiff's EMG has revealed residual neuropathic damage in the C5-6 dermatome which could certainly account for her left arm pain and complaints; however her restriction of range of motion in the shoulder would not be expected from a C5-6 radiculopathy. (Id. at 309.) He opined that she probably sustained a shoulder injury and recommended that an MRI be conducted and be evaluated by an orthopedist. (Id.) He also stated with "regard to her cervical spine, she has reached maximal

1  medical improvement." (Id. at 310.) On May 28, 2005, an MRI of the left shoulder revealed
2  "supraspinatus tendinopathy without full thickness tear, deltoid bursitis, probable small superior
3  labral tear and subchondral edema involving the humeral head." (Id. at 297.)
4      On February 10, 2006, Dr. L. Mercer McKinley, an orthopedist, evaluated Plaintiff. (Id. at
5  323-27.) He diagnosed her with spraspinatus tear of the left shoulder. (Id. at 326.) He prescribed
6  her Lyrica to decrease nerve irritability and noted that there is not much to be done other than
7  medication for her condition. (Id.) He recommended she be seen by a shoulder specialist as she
8  may be a candidate for diagnostic anthroscopy. (Id. at 327.) On a return visit on May 8, 2006,
9  Plaintiff continued to have symptoms of burning dysesthesias which was being helped by Lyrica.
10 (Id. at 328.)  On December 29, 2004, a residual functional capacity assessment concluded that
11 Plaintiff could occasionally and frequently lift ten pounds, stand and/or walk about six hours a day,
12 sit for a total of six hours, and have unlimited restriction as to pushing or pulling. (Id. at 274-81.)
13 **A.   Hearing Testimony**
14     At the hearing, Plaintiff testified that she worked for six months prior to her back surgery and
15 stopped working around January 2, 2002. (Id. at 334.) She performed light duty work of standing at
16 the gate and collecting tickets at the airport. (Id. at 333.) She testified that she has been working
17 part-time at a podiatrist office. (Id. at 337.) She works there two times a week for about four hours
18 a day. (Id.) She escorts patents to their rooms. (Id.)
19     Plaintiff stated that she still has an aching, burning pain that hasn't gone away in her neck,
20 left shoulder, left arm and left hand. (Id. at 338-39.) Her pain on a scale of one to ten is about a four
21 or five. (Id. at 339.) She testified that she cannot do much with her left hand and needs to rest it
22 after a few minutes. (Id. at 340.) She is a right handed person. (Id. at 339-40.) She states that she
23 lies down every few hours about five to six times a day for about half an hour. (Id. at 341.) She
24 states that she can lift about five or six pounds, can only sit comfortably for half an hour, and stand
25 comfortably for about an hour and able to walk a few block before she needs to rest. (Id. at 342-43.)
26 She testified that she takes Lyrica, for nerve pain, Ambien for sleep, Vicodin, two three times a
27 week, and Fioricet for migraines. (Id. at 344-45.)
28     She states that she gets migraines two or three times a month and she has to be in a dark

room with ice packs on her head and neck. (Id. at 345.) She testified that she has not been treated for migraines since she moved to San Diego in July 2005. (Id. at 346.) She can wash her hair and take a shower. (Id. at 347.) She watches TV, drives two or three times a week, to visit the doctors or relatives. (Id. at 348-49.) She also testified that on certain days her pain level spikes to a six out of ten when she overexerts herself but she said it does not happen very often. (Id. at 350. )

Plaintiff states that the pain affects her ability to read, her ability to hold something in her hand for a long period of time, and looking down at a keyboard bothers her neck and shoulders. (Id. at 351.) Sitting at a desk with her arms in front of her will bother her after a period of time. (Id. at 351-52.) She states she doesn't have problems standing and doing some dishes. (Id. at 352.) Since she has worked at the podiatrist office in the past year, she has missed work six or eight times. (Id. at 353.) She testified that she has good days and bad days. (Id. at 354.) On a bad day, she does not do much of anything. (Id. at 354.) Her good and bad days are equally divided. (Id. at 355.)

After a review of the records, Dr. Weilepp, the medical expert, testified that Plaintiff can carry ten pounds frequently and twenty pounds occasionally. (Id. at 357.) He said there should be no frequent kneeling, crawling or squatting and no ropes, ladders or scaffolds. (Id. at 358-59.) He said that sitting should be minimally impacted so she can sit and walk six hours or more for 90 to 120 minutes at a time. (Id. at 360.) He noted that she should also have no prolonged extension or flexion. (Id. at 362.)

## ALJ's Findings

The ALJ found that Plaintiff has not engaged in substantial gainful activity since November 13, 2000. (Id. at 12.) He determined that Plaintiff has severe impairments of status post anterior cervical fusion at C5-6 with residual left cervical radiculopathy and shoulder tendinopathy with labral tear. (Id.) He concluded that claimant's alleged concentration and memory problems constitute mental impairments are not severe. (Id.) The ALJ assessed that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Id.) The ALJ concluded that Plaintiff has the residual functional capacity to perform the job duties of sedentary level work activity. (Id. at 13-15.) He rejected Plaintiff's allegations of symptoms and functional limitation. (Id. at 14.) He determined that

Plaintiff is capable of performing past relevant work as an office manager.  (Id. at 15.)  In conclusion, the ALJ assessed that Plaintiff was not under a "disability" as defined in the Social Security Act.  (Id.)

## Discussion

**A.     Standard of Review**

Section 205(g) of the Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.  42 U.S.C.A. § 405(g).  The Commissioner's denial of benefits  "will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Brawner v. Secretary of Health and Human Servs., 839 F.2d 432, 433 (9th Cir. 1988) (citing Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance.  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions.  Id.  If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  "[Q]uestions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

**B.     Analysis**

To qualify for disability benefits under the Act, an applicant must show that: (1) he or she suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more, and (2) the impairment renders the applicant incapable of performing the work that the applicant previously performed and incapable of performing any other substantially gainful employment that exists in the national economy.  42 U.S.C.A. § 423(d).  The claimant's impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

1992).

The Social Security Regulations (hereinafter "Regulations") employ a five step process to determine whether an applicant is disabled under the Act. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed to the subsequent steps. 20 C.F.R. § 404.1520; <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999). The applicant bears the burden of proof as to the first four steps. <u>Tackett</u>, 180 F.3d at 1098. If the fifth step is reached, the burden shifts to the Commissioner. <u>Id.</u> The five steps are as follows:

> Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.
>
> Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.
>
> Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines . . . . If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability insurance benefits.

<u>Id.</u> at 1098-99 (footnotes and citations omitted).

In determining whether a claimant has a severe impairment, the ALJ must consider a claimant's symptoms, such as pain. 20 C.F.R. § 404.1529(d). In determining whether to accept a

claimant's allegations of pain, the ALJ must conduct a two stage analysis. <u>Smolen v. Chater</u>, 80 F.3d 1273 (9th Cir. 1996). First, the ALJ must conduct a <u>Cotton</u> analysis, where a claimant 1) must produce objective medical evidence of an underlying impairment; and 2) show that the impairment could reasonably be expected to produce some degree of the symptom. <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1407-08 (9th Cir. 1986). The claimant is not required to produce objective medical evidence of the pain, itself, but only demonstrate that there is a reasonable inference that the medical impairment causes the symptom. <u>Smolen</u>, 80 F.3d at 1282. Also, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." <u>Id.</u>

If the claimant satisfies the <u>Cotton</u> test and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." <u>Smolen</u>, 80 F.3d at 1281. The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993). In assessing Plaintiff's credibility, the ALJ "must give full consideration to all of the available evidence, medical and other, that reflects on the impairment and any attendant limitations of function." <u>Smolen</u>, 80 F.3d at 1285 (quoting Social Security Ruling 88-13.) Other evidence may be subjective symptom testimony, lay testimony of family members, opinions from examining physicians, or other third parties regarding the nature, onset, duration and frequency of claimant's symptoms. <u>Id.</u> at 1284-85.

Plaintiff argues that the ALJ erred in not adequately assessing Plaintiff's ability to sustain gainful activity due to exacerbations of her symptoms and her migraine headaches. Defendant contends that the ALJ reasonably adopted the assessments of the medical expert, Dr. Weilepp and the state agency physicians particularly where no other physician suggested greater limitations.

In coming to his conclusion, the ALJ found that Plaintiff's allegations of pain were excessive, not credible and inconsistent with the record. He explained:

> <u>First</u>, although the claimant complained of some discomfort in her left arm, pertinent treatment notes from Joseph R. Walker, M.D., dated July 1, 2004, indicated that she had excellent strength in her left arm, and her biceps weakness, wrist radial flexor weakness, and brachioradialis reflex depression had all returned to normal. <u>Second</u>, Dr. Bigley stated that with regard to her cervical spine, the claimant had reached maximal medical improvement, and that the claimant was able to actively abduct her

shoulder to approximately 100 degrees. <u>Third</u>, Dr. Weilepp concurred with the State Agency's residual functional capacity in that the claimant can could (sic) lift and carry 10 pounds, sit for six hours in an eight hour workday, and stand/walk for six hours in an eight hour workday . Dr. Weilepp opined that the claimant should perform no work above the shoulder bilaterally, no frequent kneeling, crawling, squatting, ropes, ladders or scaffolds. <u>Fourth</u>, State Agency consultants determined that the claimant could lift and carry 10 pounds occasionally and 10 pounds frequently, and sit/stand/walk for six hours in an eight hour workday with unlimited pushing and pulling. <u>Fifth</u>, State Agency consultants also opined that the claimant's mental impairments were nonsevere.

(<u>Id.</u> at 15.)

Plaintiff argues that because she has "bad days" due to her neck pain and migraine headaches she is unable to sustain substantial gainful activity. Particularly, she contends that her migraine headaches cause her to be inoperable since she is limited to lying down in a dark room two or three times a month each lasting two to three days. Defendant asserts that there is no medical evidence showing that she is disabled by an exacerbation of her symptoms or migraine headaches.

As to Plaintiff's migraine headaches, the Court concludes that the ALJ's determination that her migraines are non-severe and that the severity and frequency of her migraine headaches are not documented by the record is supported by substantial evidence. (<u>Id.</u> at 12, 15.) Plaintiff has not provided any objective medical evidence that she suffers from migraines. There are a couple of notations in Dr. Ford's notes that reference Fioricet which is medication Plaintiff testified she takes for migraines. However, Plaintiff has not pointed to any evidence in the record and it appears the administrative record is devoid of any medical record diagnosing her with migraine headaches. In fact, she testified that she has not received treatment for her migraines since she moved to San Diego in July 2005. (<u>Id.</u> at 346.) Plaintiff has only provided her testimony and disability report about the migraines. Plaintiff has failed to satisfy the first part of the <u>Cotton</u> analysis by not producing objective medical evidence of her migraine headaches. <u>See</u> <u>Smolen</u>, 80 F.3d at 1282. Accordingly, the Court concludes that the ALJ's rejection of Plaintiff's symptom testimony as to her migraine headaches was supported by substantial evidence.

As to Plaintiff's neck pain, the Court concludes that the ALJ provided clear and convincing reason for rejecting Plaintiff's allegations of pain. The medical records indicate that after her surgery in January 2002, her symptoms improved over time. (R. at 215-18.) Dr. Walker noted that

Plaintiff had "excellent strength in her left arm, and her biceps weakness, wrist radial flexor weakness and her brachioradialis reflex depression" had returned to normal. (Id. at 250.) The MRI and X-rays of the cervical spine did not reveal any abnormalities after the surgery. (Id. at 252, 253, 299.) In May 2005, Dr. Bigley, a neurologist, stated that she had reached maximal medical improvement as to her cervical spine. (Id. at 310.) In January 2002 and January 2003, Dr. Ford, Plaintiff's treating physician, noted that she was stable and able to return to permanent light-duty type work. (Id. at 217, 213.) In September 2003, Dr. Ford stated that Plaintiff was employable with certain limitations and restrictions. (Id. at 207.) At the time, he strongly recommended rehabilitation to a new work capacity and suggested she be seen at Volk Rehabilitation for training. (Id.) Based on the evidence in the record, the Court concludes that the ALJ provided clear and convincing reasons for rejecting Plaintiff's pain allegations and his conclusion is supported by substantial evidence.

**Conclusion**

After a thorough review of the record and the papers submitted and based on the reasons set forth above, this Court concludes that the ALJ's denial of benefits is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** Plaintiff's motion for summary judgment be **DENIED** and Defendant's motion for cross-motion for summary judgment be **GRANTED**.

This Report and Recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **December 3, 2007.** This document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be filed and served on or before **December 17, 2007.**

IT IS SO ORDERED.

DATED: November 2, 2007

_____
LOUISA S PORTER
United States Magistrate Judge